**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Eugene DeMaso, individually and on behalf of all others similarly situated, | 1:21-cv-06334 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Walmart Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Walmart Inc. ("Defendant") manufactures, labels, markets, and sells cookies covered in fudge and flavored by mint ingredients identified as Fudge Mint Cookies under the Great Value brand ("Product").



## I.    WHAT IS FUDGE

2.    Fudge "is a type of sugar candy that is made by mixing sugar, butter and milk."[1]

3.    Though fudge can have any flavor, milkfat is the central component.

4.    An 1893 recipe for fudge called for "Four cups granulated sugar; one cup cream; one cup water; one-half cake chocolate; one-half Cup butter."[2]

5.    In 1896, The Los Angeles Times published the original fudge recipe by the Vassar students credited with first making fudge: "Two cups of sugar, one cup of milk, a piece of butter one-half the size of an egg" and added flavoring.[3]

6.    A 1902 fudge recipe from Mrs. Rorer's New Cook Book includes:[4]

> 4 ounces of chocolate
> 2 cups of sugar
> 1 teaspoonful of vanilla
> 1/2 cup of milk
> 1 rounding tablespoonful of butter

7.    Molly Mills, one of today's leading authorities on fudge, recently described it as made "most commonly from butter, milk, sugar, and chocolate."[5]

8.    The Oxford Companion to Sugar and Sweets notes that:

> Traditionally, fudge is made by gently boiling granulated sugar and milk to the soft-ball stage (234° to 240°F/ 112° to 115°C); adding butter; cooling the mixture somewhat (120°F/49°C); then beating until thick, creamy, and less glossy.[6]

---

[1] Wikipedia contributors. "Fudge." *Wikipedia, The Free Encyclopedia*. Wikipedia, The Free Encyclopedia, 5 Jan. 2021. Web. 8 Jan. 2021.
[2] Mrs. J. Montgomery Smith, of Wisconsin, Alternate Lady Manager.
[3] Los Angeles Times, "'Fudges' Are Vassar Chocolates," May 11, 1896, p.2.
[4] Sarah Tyson Rorer [Arnold and Company: Philadelphia] 1902, p. 629.
[5] Molly Mills, Come Get Your Fudge: 40 Tasty and Creative Fudge Recipes for Everyone, Amazon Digital Services LLC, June 11, 2019.
[6] Goldstein, Darra, and Sidney Mintz. The Oxford companion to sugar and sweets. Oxford University Press, 2015.

9.    An A-Z of Food and Drink, an authoritative treatise, describes fudge as "a sort of soft, somewhat toffee-like sweet made by boiling together sugar, butter, and milk."[7]

10.    A leading textbook on confectionary science and technology offers a model commercial formulation for fudge which includes between eight and sixteen percent butter and between twelve and twenty percent sweetened condensed milk.

| 10.2    Formulations and Ingredients | | | | 275 |
|---|---|---|---|---|

**Table 10.1**  Typical batch formulations (in %) for caramel, fudge and toffee

|  | Commercial caramel (ungrained) | Caramelized sugar caramel | Fudge | English toffee (American) |
|---|---|---|---|---|
| Water | 15–25 | 0 | 10–15 | 8–10 |
| Sucrose | 10–20 | 55–65 | 30–50 | 45–55 |
| Glucose syrup (42 DE) | 36–46 | 0–5 | 10–20 | 0 |
| Sweetened condensed milk[a] | 20–40 | 0 | 12–20 | 0 |
| Cream | 0 | 25–35 | 0 | 0 |
| Butter[b] (fat) | 5–15 | 6–12 | 8–16 | 40–50 |
| Fondant | 0 | 0 | 3–5 | 0 |
| Chocolate liquor/cocoa powder | 0 | 0 | 0–10 | 0 |
| Salt | 0.2–0.5 | 0.2–0.5 | 0.2–0.5 | 0.3–0.6 |
| Vanilla | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 |
| Lecithin | 0–0.4 | 0–0.4 | 0–0.4 | 0.25–0.45 |
| Nuts (unroasted) | 0 | 0 | 0–12 | 6–12 |

[a] Other dairy ingredients might include evaporated milk or dried milk powder
[b] Salted butter needed for toffee

11.    Dictionaries confirm the definitions held by confectionery experts.

12.    Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines fudge as "a soft candy made from sugar, butter, and milk or cream."[8]

13.    The Cambridge Dictionary defines fudge as "a soft sweet made from sugar, butter, and milk."[9]

14.    Collins Dictionary defines fudge as "a soft brown candy that is made from butter, cream, and sugar."[10]

---

[7] John Ayto, An A-Z of Food and Drink, Oxford University Press, 2002, p. 133.
[8] Fudge definition – Google search.
[9] Cambridge Dictionary, fudge.
[10] Collins Dictionary, fudge.

15.     Dictionary.com defines fudge as "a soft candy made of sugar, butter, milk, chocolate, and sometimes nuts."[11]

16.     Macmillan Dictionary defines fudge as a "soft brown sweet food made from sugar, butter, and milk or cream."[12]

## II.     FAT INGREDIENTS ARE ESSENTIAL TO FUDGE

17.     The quality of fudge depends on the amount and type of fat-contributing ingredients.[13]

18.     The small droplets of fat are dispersed throughout the fudge mass, providing lubricity, and imparting desirable flavor release.[14]

19.     The fat ingredients are typically from dairy and based on milk fat, mainly added through butter (80% milkfat).

20.     Other dairy ingredients like milk and milk derivatives may be added as well.

21.     Dairy ingredients impart a creamy, rich taste and texture to fudge, because milkfat contains hundreds of lactones, aroma compounds which contribute to its taste.

22.     Milk fat melts at mouth temperature (35 °C/95 °F) and does not contribute to a waxy sensation.

23.     Alternatives to milk fat, such as vegetable oils in the form of vegetable shortening, are often used in place of dairy ingredients to reduce cost.

24.     These vegetable shortening ingredients, like palm and palm kernel oil, are solid at room temperature, and referred to as "hard [vegetable] fats."

---

[11] Dictionary.com, fudge.
[12] Macmillan Dictionary, fudge.
[13] International Dairy Federation, Bulletin, 1982.
[14] Hartel R.W., von Elbe J.H., Hofberger R. (2018) Caramel, Fudge and Toffee. In: Confectionery Science and Technology. Springer, Cham. https://doi.org/10.1007/978-3-319-61742-8_10

25.     In contrast to dairy ingredients with milk fat, vegetable oils do not melt at mouth temperature and leave a waxy mouthfeel.

26.     The result of substituting vegetable oils for dairy ingredients is that any resulting "fudge" will provide less satiety, a waxy and oily mouthfeel, and leave an aftertaste.

27.     One popular recipe website echoes the importance of dairy ingredients to fudge, advising, "When making fudge, be sure to use good quality butter and do not substitute margarine (vegetable oils)," since they contain more water and can prevent the fudge from setting up properly.[15]

28.     Another site cautions, "Look for recipes that call for butter instead of margarine (vegetable oils)."[16]

29.     One chef recommends to "Never use margarine (vegetable oils) instead of butter [in fudge], because your fudge won't taste as good and will have a shorter shelf life."

30.     Whether a product contains fudge and/or ingredients expected in fudge, is basic front label information consumers rely on when making quick decisions at the grocery store.

31.     The Product lacks essential fudge ingredients because it does not contain any dairy ingredients and substitutes lower quality and lower-priced "Vegetable Oil Shortening," a mix of canola, palm kernel and palm oils, shown in the ingredient list.

---

[15] Use Real Butter For Making Best Fudge, RecipeTips.com.
[16] Easy Fudge Making Tips, The Happy Housewife.

5

**INGREDIENTS:** SUGAR, ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), VEGETABLE OIL SHORTENING (CANOLA, PALM KERNEL AND PALM OILS), COCOA (PROCESSED WITH ALKALI), LEAVENING (BAKING SODA, SODIUM ACID PYROPHOSPHATE, MONOCALCIUM PHOSPHATE), SOY LECITHIN, SALT, NATURAL AND ARTIFICIAL FLAVOR.

**INGREDIENTS:** SUGAR, ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), VEGETABLE OIL SHORTENING (CANOLA, PALM KERNEL AND PALM OILS), COCOA (PROCESSED WITH ALKALI), LEAVENING (BAKING SODA, SODIUM ACID PYROPHOSPHATE, MONOCALCIUM PHOSPHATE), SOY LECITHIN, SALT, NATURAL AND ARTIFICIAL FLAVOR.

32.     Even though the fudge and cookie ingredients are not identified separately, it is apparent that the vegetable shortening is part of the "fudge" because it would not be a part of a regular chocolate mint cookie.

33.     Reasonable consumers are misled by the statements, "Fudge Mint Cookies," and the picture of the cookie coated with what appears to be fudge, because they expect fudge to be made from dairy ingredients.

34.     The Product does not contain any dairy ingredients or milk fat and contains vegetable shortening for its fat content.

35.     Cookies covered in fudge made with dairy ingredients which contain milk fat are not a rare or pricy delicacy such that a reasonable consumer would verify the front label statements.

6

36.    Cookies covered in fudge made with dairy ingredients which contain milk fat exist in the marketplace and are not technologically or otherwise unfeasible to produce.

37.    The front label is misleading because it states, "Fudge Mint Cookies," but the Product does not contain fudge and/or fudge ingredients.

## III.    MINT REPRESENTATIONS

38.    The Product's green packaging, the picture of two mint leaves next to the word, "Mint," and the lack of any qualifying terms, i.e., "Mint Flavored," "Artificial Mint Flavored," causes consumers to expect it contains mint ingredients.

39.    The Product's label is misleading because it contains no mint, indicated by its absence on the ingredient list.

40.    Instead, the Product's "mint taste" is from the "Natural and Artificial Flavor," which is a synthesized blend of compounds extracted in a laboratory from artificial sources which may include petroleum byproducts.

## IV.    CONCLUSION

41.    That the Product states, "Made with Real Cocoa," furthers the misleading representations about the fudge and mint because the Product contains actual cocoa.

42.    This truthful representation causes consumers to trust the fudge and mint claims.

43.    The Product contains other representations which are misleading.

44.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

45.    By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product that contained fudge and mint

ingredients.

46.     The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

47.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

48.     Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

49.     The Product is sold for a price premium compared to other similar products, no less than approximately $1.89 for 10 oz (283 g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

50.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

51.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

52.     Plaintiff Eugene DeMaso is a citizen of Illinois.

53.     Defendant Walmart Inc., is a Delaware corporation with a principal place of business in Bentonville, Benton County, Arkansas.

54.     Plaintiff and defendant are citizens of different states.

55.     Defendant transacts business within this District through sale of the Product at its hundreds of stores within this State, and dozens within this District, and online, sold directly to residents of this District.

56.     Venue is in this District because plaintiff resides in this district and the actions giving

rise to the claims occurred within this district.

57.     Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to the claim occurred in La Salle County, i.e., Plaintiff's purchase of the Product and his awareness of the issues described here.

Parties

58.     Plaintiff Eugene DeMaso is a citizen of La Salle, La Salle County, Illinois.

59.     Defendant Walmart Inc., is a Delaware corporation with a principal place of business in Bentonville, Arkansas, Benton County.

60.     Walmart is an American multinational retail corporation that operates a chain of over 5,000 supercenters throughout the nation, selling everything from furniture to groceries.

61.     While Walmart sells leading national brands, they sell a large number of products under one of their private label brands, Great Value.

62.     Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

63.     Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

64.     Products under the Great Value brand have an industry-wide reputation for quality and value.

65.     In releasing products under the Great Value brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

66.     Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

67.     That Great Value branded products met this high bar was proven by focus groups,

9

which rated them above the name brand equivalent.

68.     Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

69.     A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

70.     Private label products under the Great Value brand benefit by their association with consumers' appreciation for the Walmart brand as a whole.

71.     The development of private label items is a growth area for Walmart, as they select only top suppliers to develop and produce Great Value products.

72.     These facts show a company with a significant amount of goodwill and equity when it comes to consumer purchasing.

73.     Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Defendant's stores, at locations such as 5307 IL-251, Peru, IL 61354, between October and November 2021, among other times.

74.     Plaintiff bought the Product because he expected it contained fudge and mint ingredients because that is what the representations said and implied.

75.     Plaintiff relied on the words and images on the Product, on the labeling and/or claims made by Defendant in digital and/or social media.

76.     Plaintiff bought the Product at or exceeding the above-referenced price.

77.     Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

78.     Plaintiff chose between Defendant's Product and products represented similarly, but

which did not misrepresent their attributes and/or lower-priced non-similar products which did not make the statements and claims made by Defendant.

79.   The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

80.   Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its abilities and/or composition.

81.   Plaintiff is unable to rely on the labeling of not only this Product, but other similar products, because he is unsure of whether their representations are truthful.

<u>Class Allegations</u>

82.   Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Texas, West Virginia, Virginia, North Carolina, Delaware, Montana, Kentucky, Tennessee, New Hampshire, New Mexico, Michigan, Alaska, South Dakota, Oklahoma, Utah, Nebraska, Georgia, Iowa, South Carolina, Indiana, Maine, Rhode Island, Kansas, and Wyoming, who purchased the Product during the statutes of limitations for each cause of action alleged

83.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

84.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

85.   Plaintiff is an adequate representative because his interests do not conflict with other

members.

86.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

87.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

88.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

89.     Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

90.     Plaintiff incorporates by reference all preceding paragraphs.

91.     Plaintiff and class members desired to purchase a product that contained fudge and mint ingredients.

92.     Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

93.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

94.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

95.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

96.     Plaintiff relied on the representations that the Product contained fudge and mint ingredients

97.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

98.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

99.     Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

100.   As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

101.   In addition, defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

102.   The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained fudge and mint ingredients.

103.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

104.   This duty is based on Defendant's outsized role in the market for this type of Product, a trusted retailer, with the Great Value brand having a very high level of trust with consumers.

105.   Plaintiff provided or will provide notice to defendant, its agents, representatives,

13

retailers, and their employees.

106. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

107. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised.

108. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

109. Defendant had a duty to truthfully represent the Product, which it breached.

110. This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, a trusted retailer that provides household goods and foods.

111. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, the nation's largest company and a fixture in American society.

112. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

113. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

114. Defendant misrepresented and/or omitted the attributes and qualities of the Product,

that it contained fudge and mint ingredients.

115. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

116. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

117. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:     November 28, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com