IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EUGENE DEMASO, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No. 1:21-cv-06334<br><br>Hon. Charles R. Norgle |

## ORDER

Defendant's motion to dismiss [8] is granted with prejudice. Civil case terminated.

## STATEMENT

Plaintiff Eugene DeMaso brings this putative class action against Defendant, Walmart Inc. Defendant sells a product called Fudge Mint Cookies under its Great Value brand ("the Product"), which are cookies covered in fudge and flavored by mint ingredients. Dkt. 1 ¶ 1. Plaintiff claims the Product's label is misleading to consumers under three theories: (1) the label claims it contains fudge when it does not, under Plaintiff's definition of fudge; (2) the label claims it contains mint ingredients when it does not; and (3) the label, by truthfully asserting it contains cocoa, makes consumers trust the fudge and mint claims. Plaintiff proposes an Illinois class and a multi-state class who purchased the Product during the statute of limitations for each cause of action alleged (the "Consumer Fraud Multi-State Class").[1] Id. ¶ 82. Plaintiff asserts the following claims

---

[1] The Consumer Fraud Multi-State Class includes individuals from the following States: North Dakota, Texas, West Virginia, Virginia, North Carolina, Delaware. Montana, Kentucky, Tennessee, New Hampshire, New Mexico, Michigan, Alaska, South Dakota, Oklahoma, Utah, Nebraska, Georgia, Iowa, South Carolina, Indiana, Maine, Rhode Island, Kansas, and Wyoming. Dkt. 1 ¶ 82.

1

individually and on behalf of the proposed classes: (1) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*; (2) violations of the Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class; (3) breaches of express warranty, implied warranty of merchantability, and the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*; (4) negligent misrepresentation; (5) fraud; and (6) unjust enrichment. Defendant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).[2] Dkt. 8. Because Plaintiff has not plausibly shown the Product's label is misleading to a reasonable consumer, the Court grants Defendant's motion and dismisses each count with prejudice.

## I. BACKGROUND

Defendant manufactures, markets, and sells the Product with the following labeling:



**INGREDIENTS:** SUGAR, ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), VEGETABLE OIL SHORTENING (CANOLA, PALM KERNEL AND PALM OILS), COCOA (PROCESSED WITH ALKALI), LEAVENING (BAKING SODA, SODIUM ACID PYROPHOSPHATE, MONOCALCIUM PHOSPHATE), SOY LECITHIN, SALT, NATURAL AND ARTIFICIAL FLAVOR.

Dkt. 1 ¶¶ 1, 31. Plaintiff asserts three theories for why the Product's labeling is misleading. First, according to Plaintiff, fat ingredients are essential to fudge. Dkt. 1 ¶ 17. In particular, to be properly considered fudge, the fat must be made with dairy ingredients rather than vegetable oils. Id. ¶ 31.

---

[2] Defendant also moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) but then later agreed that Plaintiff had subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Dkt. 13 at 1. Because the Court dismisses the motion under 12(b)(6), the Court does not address 12(b)(1).

To support this assertion, Plaintiff cites various fudge sources including recipes, dictionary definitions, textbooks on confectionary science and technology, and leading fudge authorities. Id. ¶¶ 4–6, 7, 10. For example, "Molly Mills, one of today's leading authorities on fudge, recently described it as made most commonly from butter, milk, sugar, and chocolate." Id. ¶ 7 (cleaned up). Plaintiff alleges that reasonable consumers expect fudge to be made with dairy ingredients. Id. ¶ 33. The Product, Plaintiff alleges, does not contain dairy ingredients, using vegetable shortening for its fat content. Id. ¶ 34. Accordingly, Plaintiff says, because the Product does not contain fudge or fudge ingredients, it is misleading to label the Product as "fudge." Id. ¶ 37.

Plaintiff's second theory concerns mint. Plaintiff contends that consumers expect the Product to contain mint ingredients because the Product's packaging is green and has two mint leaves next to the word "mint." Id. ¶ 38. The Product, Plaintiff asserts, does not contain mint. Id. ¶ 39. Rather the Product's mint taste comes from natural and artificial flavors. Id. ¶ 40. Thus, the Product's labeling is misleading because it leads consumers to believe the Product will contain mint as an ingredient when it does not. Id. ¶ 39.

Plaintiff's third theory is a variation on the first two. Because the label truthfully asserts the claim "Made with Real Cocoa," it makes the consumers trust the fudge and mint claims. Id. ¶ 41–42. Because the Product label was truthful in one aspect, it leads consumers to trust the other aspects—fudge and mint—which are misleading.

Altogether, Plaintiff alleges Walmart, by labeling the Product in this manner, gained an advantage against other companies, and against consumers seeking to purchase a product that contained fudge and mint ingredients. Id. ¶ 45. According to Plaintiff, the value of the Product was materially less than its value as represented by Defendant. Id. ¶ 46. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in

additional profits at the expense of consumers. Id. ¶ 47. Had Plaintiff and the proposed class members known the truth, Plaintiff argues, they would not have bought the Product or would have paid less for it. Id. ¶ 48.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-557 (2007). The complaint "must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above a speculative level.'" Doe v. Village of Arlington Heights, 782 F.3d 911, 914 (7th Cir. 2015) (quoting Twombly, 550 U.S. at 555, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (cleaned up). In reviewing the Plaintiff's claim, the Court must construe all of the plaintiff's factual allegations as true, drawing all reasonable inferences in the plaintiff's favor. Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011).

## III. DISCUSSION

The Court addresses Plaintiff's claims in two movements. The Court first discusses why the Product's labeling is not misleading as a matter of law under any of the Plaintiff's three theories of deception.[3] Next, the Court finds that Plaintiff's other causes of action fail because they are based on the same theories of deception.

---

[3] Plaintiff's third theory of deception is premised on the first two. Dkt. 1 ¶ 41–42. Because the first two fail, the Court does not address the third.

A. **Illinois Consumer Fraud and Deceptive Business Practices Act**

The ICFA "protect[s] consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." Robinson v. Toyota Motor Credit Corp., 201 Ill.2d 403, 416–17 (2002). Deceptive or unfair practices include any "misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2. To survive a Rule 12(b)(6) motion, plaintiffs bringing deceptive conduct claims under the ICFA must allege with particularity that the "defendant committed a deceptive . . . act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." Vanzant v. Hill's Pet Nutrition, Inc., 934 F.3d 730, 736 (7th Cir. 2019) (citing Siegal v. Shell Oil Co., 612 F.3d 932, 934-35 (7th Cir. 2010)). Plaintiff must plausibly allege that the front label likely leads a significant portion of reasonable consumers to falsely believe something that the back labels belie. Bell v. Publix Super Markets, Inc., 982 F.3d 468, 476 (7th Cir. 2020). What matters most is how real consumers understand and react to the advertising. Id.

Although an ICFA claim may "involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." Iborrola v. Kind, LLC, 83 F. Supp. 3d 751 (N.D. Ill. 2015) (citing Bober v. Glaxo Wellcome PLC, 246 F.3d 934, 940 (7th Cir. 2001)). A court may find a statement is not misleading as a matter of law where the plaintiff's claims are "fanciful interpretations of labels or other advertising." Bell, 982 F.3d at 477.

1. **A reasonable consumer would not plausibly expect the Product's label to promise fudge made from specific ingredients, such as butter and milk.**

Central to Plaintiff's theory of deception regarding the Product's "fudge" is that fudge must contain dairy ingredients as its source of fat. Defendant contends that the Product's "fudge" label

5

is not misleading because no reasonable consumer would interpret the term "fudge" to refer to specific ingredients (*i.e.*, butter and milk). Dkt. 9 at 15. Plaintiff ignores Defendant's arguments that he has not plausibly shown that a reasonable consumer would consider "fudge" to contain specific ingredients. Plaintiff merely states that *his* definition of fudge is not unreasonable because he has cited numerous definitions of fudge, both general purpose and academic. Dkt. 15 at 2–3. These definitions, Plaintiff argues citing inapposite authority, are consistent with how courts "discern a word's plain meaning" and "evidence of the public's understanding of a term." Dkt. 15 at 3 (citing Forth v. Walgreen Co., No. 17-cv-2246, 2018 WL 1235015, at *11 (N.D. Ill. Mar. 9, 2018) (interpreting the word "display" in the context of statutory interpretation) and G. Heileman Brewing Co. v. Anheuser-Busch Inc., 676 F. Supp. 1436, 1467 (E.D. Wis. 1987) (trademark infringement)).

There are at least three problems with these arguments. First, the issue before the Court is not what "fudge" means but what a reasonable consumer expects it to mean. Second, that dictionary definitions both general purpose and academic include dairy ingredients in their definitions of fudge does not imply that dairy ingredients would be included in a reasonable consumer's expectation. Doe v. Village of Arlington Heights, 782 F.3d at 914. And further, Molly Mills—a leading authority on fudge—notes fudge is "*most commonly*" made "from butter, milk, sugar and chocolate," not that it *must* be made from those ingredients. Dkt. 16 at 4 (emphasis added); Reinitz v. Kellogg Sales Co., No. 21-CV-1239-JES-JEH, 2022 WL 1813891, at *3 (C.D. Ill. June 2, 2022). Third, Plaintiff misstates the reasonable consumer standard. The issue is not whether *his* expectation was reasonable but whether a reasonable consumer would interpret fudge to mean it must contain dairy fats rather than vegetable fats. Plaintiff's own subjective definition of fudge, however reasonable in his own mind, does not imply his definition aligns with that of

reasonable consumer. See Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 758 (7th Cir. 2014) (noting whether a product is misleading to a reasonable consumer "is an objective question, not one that depends on each purchaser's subjective understanding" of the product).

Plaintiff has not plausibly alleged that reasonable consumers would expect fudge to contain fat from dairy ingredients rather than vegetable fats. The Court notes that Plaintiff's fudge allegations are substantially identical to a case in this circuit, which dismissed similar claims. Reinitz, 2022 WL 1813891, at *1. The plaintiff in Reinitz alleged that the labeling of "Frosted Chocolate Fudge Pop-Tarts" was misleading because the product contained whey and vegetable fats in lieu of butter and milk, "ingredients which she claim[ed] are integral to fudge." Id. The court dismissed the claim there because the plaintiff had not plausibly alleged "that the average consumer would believe that a fudge product must, of necessity, contain milkfat." Id. at *3 (citation omitted). Absent a plausible allegation that "a reasonable consumer would expect fudge to contain milkfat," the court concluded, the plaintiff "fail[ed] to establish that a consumer who purchased non-milkfat-containing Fudge Pop-Tarts would be deceived." Id. at *4. Here, as in Reinitz, Plaintiff has not alleged enough factual information to claim that a reasonable consumer would read the word "fudge" in the Product's label to imply it must necessarily contain fat from dairy ingredients. Nor does he show that this subjective definition of fudge—whether or not experts agree with it—maps onto the objective definition of a reasonable consumer. Id. at *3. Accordingly, his theory of deception regarding fudge fails.

### 2. The Product's mint representations promise a mint flavor, not an ingredient.

Plaintiff's second theory of deception concerns mint. Plaintiff alleges that the Product's mint label is misleading because the word "mint," the pictures of mint leaves, and the green packaging lead consumers to believe it contains mint as an ingredient. Yet, the Product does not

7

contain mint, and its mint flavor comes from natural and artificial ingredients. Dkt. 1 ¶ 39–40. The Plaintiff does not dispute or allege that the Product does not, in fact, taste like mint. Id. ¶ 40. Rather, the parties dispute whether the Product promises a flavor or an ingredient.

On one hand, Defendant analogizes Plaintiff's case to countless courts who have dealt with the claim that it is misleading to label a product "vanilla" if the source of vanilla comes from sources other than the vanilla bean. See, e.g., Turnipseed v. Simply Orange Juice Co., No. 20 CIV. 8677 (NSR), 2022 WL 657413, at *3 (S.D.N.Y. Mar. 4, 2022) ("[T]here is nothing in the word vanilla itself that would lead a reasonable consumer to understand a product's flavor to be derived mostly or exclusively from the vanilla bean.") (collecting cases) (cleaned up). Defendant also cites a case in this district, which found that the term "vanilla" and an image of a vanilla flower did not suggest that the product's vanilla flavor came from vanilla beans. Zahora v. Orgain LLC, No. 21 C 705, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021) (noting that "[h]ad the Product's label contained words such as 'made with vanilla beans' or 'contains vanilla beans,' then a reasonable consumer might have been led to believe that vanilla from vanilla extract is the primary or exclusive source of its flavor."). Defendant suggests that absent words such as "made with mint," a reasonable consumer could only conclude that the cookies taste like mint. Dkt. 16 at 10.

On the other hand, Plaintiff distinguishes the vanilla cases, arguing the issue in those cases dealt with the products' flavors, not ingredients. Plaintiff says vanilla is a flavor designator whereas, here, mint is an ingredient, providing nutritional value. Second, Plaintiff argues the pictures of mint leaves differentiate this case from most of the vanilla cases, where the product's labeling only contained the word "vanilla" without any indication regarding the source, such as vanilla beans. Moreover, the Product does not contain qualifying terms such as "Mint Flavored" or "Artificial Mint Flavored" which could have put Plaintiff on notice that it did not contain mint

8

ingredients. Finally, Plaintiff points to Bell arguing that when there is "room to argue about the precise meaning of . . . front label claims," a motion to dismiss under 12(b)(6) should be denied. Dkt. 15 at 6 (citing Bell, 982 F.3d at 494).

The Court agrees with Defendant. First, Plaintiff's reading of Bell proves too much. Where a reading of a label is "unreasonable or fanciful" a court may conclude that a label is not misleading as a matter of law. See Bell, 982 F.3d 468, 477. Regarding Plaintiff's nutritional claim, it is highly unlikely that a consumer would purchase Walmart's Great Value Fudge Mint Cookies for mint's nutritional value as an ingredient. Brown v. Kellogg Sales Co., No. 1:20-CV-7283-ALC, 2022 WL 992627, at *5 (S.D.N.Y. Mar. 31, 2022) ("[A] reasonable consumer is unlikely to purchase a toaster pastry coated in frosting exclusively for the nutritional value of strawberries in its fruit filling."). People do not buy fudge cookies for their nutritional value.

The primary issue concerns whether the Product's "mint" representations promise a mint flavor or mint as an ingredient. The Court finds that this case "hews closer" to the vanilla cases than to a case promising ingredients. See Cruz v. D.F. Stauffer Biscuit Co., No. 20CV2402PGGJLC, 2021 WL 5119395, at *6 (S.D.N.Y. Nov. 4, 2021) (finding case involving lemon snap cookies with pictures of three lemons was closer to vanilla cases than a case involving ingredient misrepresentations). Mint is most commonly associated with flavor. Much like ice cream, "mint" products, like toothpaste, chewing gum, or mouth wash are "routinely identified by [their] flavor, not by [their] ingredients." Wach v. Prairie Farms Dairy, Inc., No. 21 C 2191, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022). So, the word "flavored" after "mint" would be superfluous. Moreover, of the vanilla cases, the only ones that appear to have survived dismissal are those which contain a "label reading Made with Aged Vanilla." Id. *3 n.2 (collecting cases and finding that the only cases that survived dismissal were those that involved a label reading "Made

9

with Aged Vanilla.") (cleaned up). Here, the label does not contain a "Made with Mint" label. But it does contain a label reading "Made with real cocoa." This would put a reasonable consumer on notice that the only ingredient claim they could reasonably rely on is cocoa—contrary to Plaintiff's conclusions that a reasonable consumer would infer the opposite, which the Court need not accept. Burger v. Cnty. of Macon, 942 F.3d 372, 374 (7th Cir. 2019) (citing Iqbal, 566 U.S. at 678). Even though the package contains pictures of two mint leaves, these leaves are stylized imitations of real mint leaves, which would further lead a reasonable consumer to conclude that they were not getting the real thing. Reasonable consumers would read the mint representations as a flavor, and it would be unreasonable and fanciful here to conclude otherwise. Bell, 982 F.3d at 477; but see Harris v. Kashi Sales, LLC, No. 21-CV-50376, 2022 WL 2390933, at *1 (N.D. Ill. July 1, 2022) (finding on a motion to dismiss that product's "mixed berry" label was plausibly misleading because it was unclear whether "mixed berry" referred to a flavor or an ingredient). Unlike in Harris, it would be clear to the reasonable consumer that this Product's mint representations refer to its flavor, not its ingredients—"mixed berry" is not a common flavor. And Plaintiff does not dispute that the Product, in fact, tastes like mint. See Dkt. 1 ¶ 40. Accordingly, the Court finds that the mint representations on the Product's label are not misleading as a matter of law. A similar conclusion could also be drawn here for "fudge" as a flavor, not an ingredient.

    The Court's findings in Karlinski v. Costco Wholesale Corp., No. 1:21-CV-03813, 2022 WL 2867383, at *6 (N.D. Ill. July 21, 2022) (Norgle, J.) comports with the result here. There, the product at issue was a chocolate almond dipped vanilla ice cream bar, which contained pictures of the raw ingredients at the bottom of the Product's label (e.g. chocolate chunks). The Court dealt with the issue of what a reasonable consumer would expect "chocolate" to mean. However, the Court entertained the plaintiff's argument regarding whether the pictures of chocolate chunks

warranted a certain amount of chocolate in the product. The Court found that the pictures of chocolate chunks "presented alongside other ingredients . . . serve as an indication of what ingredients will be in the Product, not of how much." Id. at *6 (N.D. Ill. July 21, 2022). The particular issue in Karlinski was whether the chunks represented a certain amount of that ingredient, not whether the ingredient was in the product. The Court there essentially assumed that the pictures represented ingredients. Moreover, the pictures of the assumed ingredients were real images, not stylized imitations as here. In contrast, the issue in this case is squarely whether the word "Mint" coupled with stylized pictures of mint leaves leads a reasonable consumer to believe that the Product contains real mint. The Court find it does not.

## B. Out-of-State Consumer Fraud Acts; Common Law, and MMWA claims.

According to Plaintiff, the Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce. Dkt. 1 ¶ 98. Accordingly, the Court assumes these Acts are substantially the same as the ICFA for the purposes of determining whether a reasonable consumer would be deceived by the Product's label. Jacobs v. Whole Foods Mkt. Grp., Inc., No. 22 C 2, 2022 WL 3369273, at *2 (N.D. Ill. Aug. 16, 2022).

Plaintiff's claims for violations of out-of-state consumer fraud statutes; breach of express warranty, implied warranty of merchantability, and MMWA; negligent misrepresentation; fraud; and unjust enrichment are each premised on the same theory of deception as his ICFA claim. Dkt. 1 ¶ 99 ("Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct[.]"); id. ¶ 102 ("The Product . . . expressly and impliedly warranted to plaintiff and class members that it contained fudge and mint ingredients."); id. ¶ 112 ("Plaintiff and class members reasonably and justifiably relied on these

negligent misrepresentations and omissions[.]"); id. ¶ 114 ("Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained fudge and mint ingredients."); id. ¶ 117 ("Defendant obtained benefits and monies because the Product was not as represented and expected[.]"). Accordingly, because the Product's labeling is not false, misleading, or deceptive as a matter of law, Plaintiff's other claims also fail. See Wach, 2022 WL 1591715, at *6 (finding that Plaintiff's common law and MMWA claims fail because they were premised on the incorrect assertion that the Product's labeling is false, deceptive, and misleading).

## IV. CONCLUSION

Plaintiff has not plausibly alleged that reasonable consumers would be misled by the statements on the Product's label, and an amendment to his pleadings cannot change that. Defendant's motion to dismiss is granted with prejudice. See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana, 786 F.3d 510, 520 (7th Cir. 2015) (A district court should generally grant leave to amend a complaint after granting a motion to dismiss unless any amendment would be futile.).

IT IS SO ORDERED:    ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 23, 2022