IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Eugene DeMaso, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 21-cv-06334 |
| v. | Judge Mary M. Rowland |
| Walmart Inc., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eugene DeMaso brings this suit against Defendant Walmart Inc., individually and on behalf of a putative classes of consumers from 26 states including Illinois alleging they were deceived by the words, "fudge" and "mint" on the front label of Defendant's Fudge Mint Cookies (the "product"). Plaintiff brings claims under the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA"), 815 Ill. Comp. Stat. 505/2; the state consumer fraud laws of the other 25 states; breaches of express warranty, implied warranty of merchantability and the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301; and common law claims for negligent misrepresentation, fraud, and unjust enrichment. Plaintiff requests class-wide injunctive relief as well as damages and restitution.

Defendant has moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and also under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff lacks standing to assert injunctive relief. For the reasons stated herein, Defendant's Motion to Dismiss [8] is granted.

1

I.  **Background**

The following factual allegations taken from the operative complaint (Dkt. 1) are accepted as true for purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Defendant manufactures, labels, markets, and sells cookies covered in fudge and flavored by mint ingredients identified as Fudge Mint Cookies under the Great Value brand. Dkt. 1 at ¶ 1. Plaintiff alleges that reasonable consumers are misled by the statements "Fudge Mint Cookies" and the picture of the cookie coated with what appears to be fudge. *Id.* at ¶ 33. Reasonable consumers expect fudge to be made from dairy ingredients, Plaintiff asserts, but the product does not contain any dairy ingredients or milk fat and contains vegetable shortening for its fat content. *Id.* at ¶¶ 33–34.

According to Plaintiff, the product's green packaging, the picture of two mint leaves next to the word, "Mint" and the lack of any qualifying terms, i.e., "Mint-flavored", "Artificial Mint Flavored," may cause consumers to expect it contains mint ingredients. *Id.* at ¶ 38. Plaintiff believes that this label is misleading because the product contains no mint; mint is not on the ingredient list. *Id.* at ¶ 39. The product's mint taste, Plaintiff alleges, is a synthesized blend of compounds extracted in a laboratory from artificial sources. *Id.* at ¶ 40. Plaintiff alleges that by stating that the product is "Made with Real Cocoa," Defendant enhanced the misleading representations about the fudge and mint because the product actually does contain cocoa so consumers would be more likely to believe there was actual fudge and mint.

*Id.* at ¶ 41. A copy of the packaging (as it appears in the complaint) is reproduced below.



A copy of the ingredient list as listed on the product's packaging (as it appears in the complaint) is reproduced below.

**INGREDIENTS:** SUGAR, ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), VEGETABLE OIL SHORTENING (CANOLA, PALM KERNEL AND PALM OILS), COCOA (PROCESSED WITH ALKALI), LEAVENING (BAKING SODA, SODIUM ACID PYROPHOSPHATE, MONOCALCIUM PHOSPHATE), SOY LECITHIN, SALT, NATURAL AND ARTIFICIAL FLAVOR.

Plaintiff alleges that by labeling the product in this manner, Defendant gained an advantage against other companies and misled consumers seeking to purchase a product that contained fudge and mint ingredients. *Id*. at ¶ 45. Plaintiff additionally alleges that the value of the product was materially less than its value as represented by Defendant. *Id*. at ¶ 46. Finally, Plaintiff alleges that Defendant has sold more of the product and at higher prices than it would have in the absence of the alleged wrongdoing, providing Defendants with additional profits at consumers' expense. *Id*. at ¶ 47. Plaintiff seeks to represent a class of consumers from 26 states. *Id*. at ¶ 82.[1]

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements

---

[1] Plaintiff seeks to represent consumers from Illinois, North Dakota, Texas, West Virginia, Virginia, North Carolina, Delaware, Montana, Kentucky, Tennessee, New Hampshire, New Mexico, Michigan, Alaska, South Dakota, Oklahoma, Utah, Nebraska, Georgia, Iowa, South Carolina, Indiana, Maine, Rhode Island, Kansas, and Wyoming. Plaintiff alleges violations of all of these states' consumer fraud laws. Dkt. 1 at ¶¶ 98–101.

of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

For fraud claims and claims of deceptive conduct under ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). The plaintiff must "plead with particularity the circumstances constituting fraud" and allege the "who, what, when, where, and how" of the alleged conduct. *Id.*

### III. Analysis

Plaintiff argues that Defendant's labeling of its product as containing "fudge" misleads consumers because Plaintiff expects milkfat, an essential ingredient in fudge, to be present in the listed ingredients. As this fudge is made with a vegetable shortening and not milkfat, it is not "fudge", according to Plaintiff. Similarly, Plaintiff

5

argues that the product label misleads consumers into believing that the product contains actual "mint". Defendant argues that its labeling is not deceptive or misleading and so Plaintiff fails to state a claim under the ICFA and other state consumer fraud statutes. Defendant further contends that Plaintiff's fraud, negligent misrepresentation, and unjust enrichment claims should also be dismissed. Finally, Defendant argues that Plaintiff lacks standing to seek injunctive relief.

### A. ICFA, State Consumer Fraud Laws, common Law Fraud Claims

Defendant moves to dismiss, arguing that its label is not deceptive as a matter of law. The Court begins with the ICFA claim, since Defendant's argument seeking to dismiss that claim informs the Court's analysis of the entire class action complaint.[2]

ICFA is "a regulatory and remedial statute intended to protect consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 644, 646 (7th Cir. 2019) (cleaned up). To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v.*

---

[2] Defendant argues that Plaintiff lacks standing to seek injunctive relief. *See Benson v. Fannie May Confections Brands, Inc.*, No. 17-3519, 2018 WL 1087639 at *5 (N.D. Ill. Feb. 28, 2018) ("a plaintiff who is aware of a defendant's deceptive practices is not likely to be harmed by them in the future, and therefore lack standing to pursue injunctive relief."); *See also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) (explaining that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.") (cleaned up). The Court agrees that under *Camasta*, Plaintiff has no imminent injury because he has already been deceived (allegedly), is now aware of Walmart's sales practices and "[r]aw 'allegations of possible future injury' are not enough." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 703 (N.D. Ill. 2020) (citations omitted). Plaintiff's injunctive relief claim is dismissed for lack of standing.

*Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (citation omitted). "[T]he facts alleged in a complaint attempting to show fraud under the ICFA must show not just the mere possibility of a fraud, but that fraud is a '*necessary or probable inference* from the facts alleged." *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) (quoting *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992)). Plaintiff must plead that "the relevant labels are likely to deceive reasonable consumers," which "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020)).

"Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Id.* at 476. Indeed the "reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label." *Id.* at 477. "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id.*; *see also Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) ("Although ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law.");

*Zarinebaf v. Champion Petfoods USA Inc.*, No. 18-cv-6951, 2019 WL 3555383, at *6 (N.D. Ill. July 30, 2019) ("[C]ourts routinely analyze whether statements like these are deceptive as a matter of law under the ICFA.").

### 1. "Fudge" is not a misleading term on the product's front label

Plaintiff argues that Defendant's use of the term "fudge" is deceptive as it "plausibly could deceive a reasonable consumer." *Phillips v. DePaul Univ.*, 19 N.E.2d 1019, 1031 (Ill. App. Ct. 2014). Plaintiff states that his interpretation of the labeling is consistent with numerous general purpose and academic definitions of the term fudge. Dkt. 15 at 3. He claims that these definitions are consistent with how courts "discern a word's plain meaning" and are "evidence of the public's understanding of a term." *Id.* But cites cases that do not apply to his allegations. *See Forth v. Walgreen Co.*, No. 17-cv-2246, 2018 WL 1235015 at *11 (N.D. Ill. Mar. 9, 2018) (interpreting the word "display" in the context of statutory interpretation); *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 676 F. Supp. 1436, 1467 (E.D. Wis. 1987) (discussing trademark infringement).

The problem is that Plaintiff's own complaint asserts that fudge can contain vegetable oils, undercutting his reliance on these general purpose and academic definitions. Dkt. 1 at ¶¶ 17, 23 ("The quality of fudge depends on the amount and type of fat-contributing ingredients."; "Alternatives to milk fat, such as vegetable oils in the form of vegetable shortening, are often used in place of dairy ingredients to reduce cost."). Plaintiff did not cite any caselaw that shows that consumers expect the term "fudge" to denote that a certain product contains specific ingredients. *See Reinitz v.*

*Kellogg Sales Co.*, No. 21-cv-1239-JES-JEH, 2022 WL 1813891, at *3 (C.D. Ill. June 2, 2022) (finding that no reasonable consumer would believe a fudge product must, of necessity, contain milkfat).

To the contrary, a number of similar cases in this circuit alleging deceptive labeling practices regarding "fudge" have been dismissed.[3] Plaintiff's claims here are akin to those in, for example, *Lederman v. Hershey Co.,* No. 21-cv-4528, 2022 WL 3573034 (N.D. Ill. Aug. 19, 2022) and *Bartosiake v. Bimbo Bakeries, USA, Inc.*, No. 21-cv-4495, 2022 WL 4552025 (N.D. Ill. Sept. 29, 2022). And unlike in *Strow v. B&G Foods, Inc.,* Case No. 21-cv-5104, 2022 WL 4608948 (N.D. Ill. Sept. 30, 2022), here Plaintiff does not allege that the front label of the product states, immediately next to word "fudge" or "mint", the phrase "Natural & Artificial Flavor".

### 2. "Mint" is not a misleading term on the product's front label

Plaintiff alleges that the product's mint label is misleading because the word "mint," the pictures of mint leaves, and the green packaging led consumers to believe it contains mint as an ingredient. Yet, the product does not contain mint, and its mint flavor comes from natural and artificial ingredients. Dkt. 1 at ¶¶ 39–40. Plaintiff does not allege that the product does not, in fact, taste like mint. *Id*. at ¶ 40. Rather, the parties dispute whether the product promises a flavor or an ingredient. The Court agrees with Defendant that the product promises a flavor.

---

[3] *E.g. Reinitz,* 2022 WL 1813891 (C.D. Ill. June 2, 2022); *Rice v. Dreyer's Grand Ice Cream, Inc.*, No. 21-cv-3814, 2022 WL 3908665 (N.D. Ill. Aug. 30, 2022); *Huston v. Conagra Brands, Inc.*, No. 21-cv-4147-SLD-JEH, 2022 WL 4647251 (C.D. Ill. Sept. 30, 2022); *Cox v. Star Brands N. Am., Inc.*, No. 22-cv-141-NJR, 2022 WL 16786019 (S.D. Ill. Nov. 8, 2022); *Troutt v. Mondelēz Global LLC*, No. 21-cv-1279-SPM, 2022 WL 16552956 (S.D. Ill. Oct. 31, 2022).

Plaintiff argues that an "equally plausible interpretation" of the product's reference to mint is that it refers to the product's ingredients. Dkt. 15 at 6. Plaintiff relies on *Bell*, but that case does not support his argument. *Bell* involved cheese products prominently labeled on the front "100% Grated Parmesan Cheese." 982 F.3d at 474. The Seventh Circuit concluded that "a plausible reading [ ] is that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated." *Id.* at 477. In addition, unlike here, the *Bell* plaintiffs alleged that they had conducted consumer surveys showing that consumers were misled by the label and also provided affidavits from linguists. *Id.* at 480. There is no "100%" (or any percentage) ingredient claim in this case. The front label makes no specific ingredient claim at all. It simply describes the entire product as "Fudge Mint Cookies". *See Zahora v. Orgain LLC*, No. 21 C 705, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021) ("A reasonable consumer would not read into the label what is simply not there."); *Bell,* 982 F.3d at 476 ("What matters most is how real consumers understand and react to the advertising.").

This case is also similar to those involving vanilla, where courts have concluded that the vanilla was a flavor, not an ingredient. *See Cruz v. D.F. Stauffer Biscuit Co.*, No. 20-cv-2403-PGG-JLC, 2021 WL 5119395 at *6 (S.D.N.Y. Nov. 4, 2021) (discussing vanilla cases). And like ice cream, mint products, are "routinely identified by [their] flavor, not by [their] ingredients." *Wach v. Prairie Farms Dairy, Inc.*, No. 21-cv-2191, 2022 WL 1591715 at *3 (N.D. Ill. May 19, 2022).

Thus, Plaintiff has not sufficiently pled that a reasonable consumer would be misled by the label, requiring dismissal of the ICFA claim. *See Rice v. Dreyer's Grand Ice Cream, Inc.*, No. 21 C 3814, 2022 WL 3908665, at *5 (N.D. Ill. Aug. 30, 2022) ("Because the product is not deceptively labeled, [plaintiff's] ICFA claim is dismissed."). Plaintiff's State Consumer Fraud Acts claims[4] and the stand-alone common law fraud claim[5] are similarly based on a legally unreasonable interpretation of the product's front label and do not survive the dismissal motion.

### B. Warranty and MMWA, negligent misrepresentation and unjust enrichment

Plaintiff's warranty claims are based on the same theory of deception as alleged in the ICFA claim. *See* Dkt. 1 at ¶ 102 (the Product "expressly and impliedly warranted to [P]laintiff and class members that it contained fudge and mint ingredients.). An express warranty claim requires that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). A breach of implied warranty of merchantability occurs if the product is not "fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2-314(2)(c). However, Plaintiff does not sufficiently identify an actionable "affirmation of fact or promise."

---

[4] Plaintiff states that the laws of the states in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce. Dkt. 1 at ¶ 98. Accordingly, the Court assumes these Acts are substantially the same as the ICFA for the purposes of determining whether a reasonable consumer would be deceived by the product's label. *Jacobs v. Whole Foods Mkt. Grp., Inc.*, No. 22-cv-2, 2022 WL 3369273 at *2 (N.D. Ill. Aug. 16, 2022).

[5] *See* Dkt. 1 at ¶ 114 ("Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained fudge and mint ingredients.").

Nor does Plaintiff allege that the cookies are unfit to eat (its ordinary purpose). The Court's finding that a reasonable consumer would not be misled for purposes of the ICFA claim applies as well to the warranty claims. *See Reinitz*, 2022 WL 1813891, at *5; *Wach*, 2022 WL 1591715, at *6 (explaining that the conclusion that the product's labeling was not false, misleading, or deceptive as a matter of law was also fatal to the claims including for breach of express and implied warranties).

Because the state law warranty claims fail, the MMWA claim also fails. *See Rice*, 2022 WL 3908665, at *5 ("because [plaintiff's] MMWA claim is based on his state law warranty claims, it also fails as a matter of law"); *Lederman*, 2022 WL 3573034, at *6 (dismissing MMWA claim because the consumer's ability to state a claim under the MMWA depended on a viable underlying state-law warranty claim). Additionally, Plaintiff's argument in response regarding the MMWA is cursory and underdeveloped; he provides no authority to respond to Defendant's arguments (Dkt. 15 at 14), and the Court will not construct his arguments for him. *See G & S Holdings LLC*, 697 F.3d at 538.

The negligent misrepresentation and unjust enrichment claims are based on the same theory. Dkt. 1 at ¶ 109 ("Defendant had a duty to truthfully represent the Product, which it breached"), and *id.* ¶¶ 117 ("Defendant obtained benefits and monies because the Product was not as represented"). Negligent misrepresentation requires a false statement of material fact. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). Plaintiff concedes that "Defendant is correct that Plaintiff's claim of unjust enrichment 'will stand or

12

fall' with his other claims…". Dkt. 15 at 9. Where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). *See also Lederman*, 2022 WL 3573034, at *6-7 (where ICFA claim failed, negligent misrepresentation and unjust enrichment claims failed as well). Accordingly, the warranty, MMWA, negligent misrepresentation and unjust enrichment claims are dismissed.

## IV. Conclusion

For the stated reasons, Defendant's Motion to Dismiss [8] is granted. Plaintiff is given leave to file an amended complaint by February 22, 2023, if Plaintiff has a good faith basis for doing so. Otherwise, the dismissal of this complaint will convert to dismissal with prejudice.

E N T E R:

Dated: February 7, 2023

_____
MARY M. ROWLAND
United States District Judge

13